IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DANYA PEDEN, individually, and FALON CARPENTER, individually and on behalf of all others similarly situated, | § § § § | |
| Plaintiffs, | § | Civil Action No. 3:21-CV-02286-E |
| v. | § § | |
| PROVIDENCE TITLE COMPANY and DANIEL A. FOSTER, | § § § § | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Providence Title Company's and Daniel A. Foster's (collectively "Providence") Amended Motion for Partial Summary Judgment. (ECF No. 60). Providence seeks dismissal of Plaintiff Falon Carpenter ("Carpenter") and the class of 18 similarly situated Non-Exempt Plaintiffs' (the "Non-Exempt Plaintiffs")[1] FLSA claim. Also before the Court is Providence's Motion to Bifurcate seeking bifurcation of: (i) Plaintiff Danya Peden's ("Peden") claim from the Non-Exempt Plaintiffs' claims, and (ii) the Non-Exempt Plaintiffs' trial into liability and damages. (ECF No. 72). After careful consideration of the Parties' briefing; appendices; and applicable law, for reasons enumerated hereunder, the Court **GRANTS** Providence's Amended Motion for Partial Summary Judgment. Thus, the Court **DENIES AS MOOT** Providence's Motion to Bifurcate.

---

[1] Carpenter is a non-exempt employee and is included when the Court states "Non-Exempt Plaintiffs" throughout the remainder of this opinion. Additionally, the Non-Exempt Plaintiffs have elected not to seek notice to or certification of a class of additional Plaintiffs. Thus, this lawsuit is limited to a total of 20 individuals: Peden and the 19 Non-Exempt Plaintiffs—including Carpenter. (ECF No. 61 at 6).

## I. BACKGROUND

### A. Factual Background

This case involves a dispute concerning the Fair Labor Standards Act ("FLSA"). Providence is a title company—a type of insurance company that warrants the sales of homes against claims others might make against a property. (ECF No. 11 at 6). The Non-Exempt Plaintiffs and Peden (all collectively "Plaintiffs") were employed by Providence and frequently worked over 40 hours a week. (ECF No. 11 at 7). All Plaintiffs were paid a mixture of salary and commissions, but only non-exempt employees were entitled to overtime premium pay. (ECF No. 11 at 7).

It is undisputed that Providence classified Peden as an exempt employee, however, Plaintiffs allege this was a misclassification. (ECF No. 11 at 7). Thus, as an exempt employee, Peden was not entitled to overtime premium pay when she worked over 40 hours. (ECF No. 11 at 8). Providence classified escrow officers—including Carpenter—and escrow assistants as non-exempt under the FLSA, which allowed them the opportunity to receive overtime premium pay when they worked over 40 hours in a seven-day workweek. (ECF No. 11 at 7). As alleged, whenever an escrow officer or escrow assistant—non-exempt employees—earned a commission, Providence deducted that commission from overtime pay earned instead of including it in the regular rate of pay when paying overtime. (ECF No. 11 at 7). The Non-Exempt Plaintiffs allege this practice is a violation of the FLSA. (ECF No. 11 at 9).

### B. Calculation of Compensation and Overtime Payments

Providence laid out the computations used in generating the Non-Exempt Plaintiffs' compensation in explicit detail in its motion for summary judgment. (*See* ECF No. 61 at 13-20). Although the Non-Exempt Plaintiffs obviously dispute whether they are receiving the payment they believe they are entitled to, the Non-Exempt Plaintiffs do not dispute that Providence

calculated compensation using the methods set forth below. Providence calculated each of the 19 Non-Exempt Plaintiffs' semi-monthly compensation using the following formula:[2]

**Compensation** = Salary Pay + Base OT + Net Commission + Net Commission OT

**Salary Pay** refers to the Non-Exempt Plaintiffs' base salary paid out semi-monthly, and it is calculated by dividing the annual salary by 24. (ECF No. 61 at 12). **Base OT** refers to all hours worked over 40 in a workweek, which is calculated by 1.5 times the employee's regular rate of pay times all hours worked over 40 in a workweek. (ECF No. 61 at 13). Providence calculated the Non-Exempt Plaintiffs' **regular rate of pay** by dividing their annual base salary by 2080 hours, which is based off a standard 40-hour workweek.[3] (ECF No. 61 at 13). Providence calculated gross commission for the Non-Exempt Plaintiffs on a monthly basis using a specific percentage of gross revenue generated by the employee. (ECF No. 61 at 13-14). The gross revenue generated by the employee varied depending on the number and type of title files attributable to that employee in a month, as well as various expenses incurred by Providence in obtaining such revenue. (ECF No. 61 at 14). This number—the **Adjusted Production**—was then reduced by a set revenue threshold and multiplied by some percentage to obtain the **Gross Commission**. (ECF No. 61 at 14). After calculating an employee's Gross Commission, *which occurs after the Non-Exempt Plaintiff's regular pay day has passed*, Providence subtracted another business expense in its calculation: the values equivalent to the employee's current earned Base OT and Base OT paid in previous pay period—**Prior Period OT**. (ECF No. 61 at 15). Providence then used this amount as a variable in calculating a non-exempt employee's Net Commission. (ECF No. 61 at 15). Providence paid the

---

[2] Providence alleges that each Non-Exempt Plaintiff always received (1) their Salary Pay; (2) Base OT for hours worked over 40 in a workweek, if any; (3) Net Commission; and (4) Net Commission OT for hours worked over 40 in a workweek, if any. (ECF No. 61 at 21).
[3] Dividing total compensation by 40 hours rather than total hours worked increases the base rate used for overtime calculations. *See Serrano v. Republic Servs., Inc.*, 227 F. Supp. 3d 768, 769 (S.D. Tex. 2017).

Non-Exempt Plaintiffs their Net Commissions *on the 15th of each month*—thus classifying it as deferred Net Commission. (ECF No. 61 at 15). For this deferred Net Commission calculation, Providence used a standard 173.33 hours per month—derived from 2080 hours divided by 12 months.[4] (ECF No. 61 at 16).

The formula for calculating the deferred Net Commission is summarized as follows:

$$\text{Net Commission} = \frac{(Gross\ Commission - Base\ OT - Prior\ Period\ OT) * (173.33\ Hours + Total\ Monthly\ OT\ Hours)}{(173.33\ Hours + Total\ Monthly\ OT\ Hours) + (0.5 * Total\ Monthly\ OT\ Hours)}$$

Additionally, for all hours worked over 40 during a workweek, Providence paid the Non-Exempt Plaintiffs an additional overtime compensation payment in the amount of 0.5 times the employee's regular rate of pay for the Net Commissions. (ECF No. 61 at 16). This was called the Net Commission OT. (ECF No. 61 at 16). For this calculation, Providence again used a standard 173.33 hours per month.[5] (ECF No. 61 at 16). Providence alleged that they used 0.5 as the multiple in the Net Commission OT formula because the FLSA regulations only require that the regular rate increase for deferred commission payments be multiplied by one-half—the commission allocation itself represents the straight-time payment and adding the two together results in the FLSA-required payment of one and one-half. (ECF No. 61 at 17). Thus, Net Commission OT was calculated as:

$$\text{Net Commission OT} = \left(\frac{Net\ Commission}{173.33\ Hours + Total\ Monthly\ OT\ Hours}\right)(0.5)(Total\ Monthly\ OT\ Hours)$$

---

[4] Prior to September 2019, Providence used actual hours worked in its Net Commission calculation, rather than the standard 173.33 hours. (ECF No. 62 at 8).
[5] Prior to September 2019, Providence used actual hours worked in its Net Commission OT calculation, rather than the standard 173.33 hours. (ECF No. 62 at 8).

### C.    Procedural Framework

On September 24, 2021, Peden, individually, and Carpenter, individually and on behalf of the 18 other Non-Exempt Plaintiffs, filed their Original Complaint, asserting violations of the FLSA. (ECF No. 1). On October 22, 2021, Plaintiffs filed their Amended Complaint (the "Complaint"), which is the operative complaint on which Plaintiffs proceed. (ECF No. 11). In the Complaint, Plaintiffs allege the following causes of action under the FLSA: (i) misclassification as exempt employee and failure to pay overtime premium pay under 29 U.S.C. § 207(a)(1) as to Peden; and (ii) failure to include all remuneration in the regular rate of pay under 29 U.S.C. § 207(e) as to Carpenter and the Non-Exempt Plaintiffs (hereinafter "overtime miscalculation claim").

On August 7, 2023, Providence filed its amended motion for partial summary judgment, (ECF No. 60), along with its brief in support, (ECF No. 61), and appendix in support, (ECF No. 62). Plaintiffs responded on September 11, 2023, (ECF No. 68), along with their brief in support, (ECF No. 69), and appendix in support, (ECF No. 70). Providence replied on September 25, 2023. (ECF No. 71). Providence seeks dismissal of only Plaintiffs' second cause of action—the overtime miscalculation claim as to the 19 Non-Exempt Plaintiffs—so only this claim will be analyzed by the Court.

Further, on October 12, 2023, Providence filed a motion to bifurcate, seeking to bifurcate: (i) Peden's claim from the Non-Exempt Plaintiffs' claims; and (ii) the Non-Exempt Plaintiffs' trial into liability and damages. (ECF No. 72). Plaintiffs responded on November 2, 2023, (ECF No. 75), and Providence subsequently replied on November 16, 2023. (ECF No. 76).

Thus, both motions have been fully briefed and are ripe for consideration.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate when the pleadings and evidence on file show "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. A court must view all evidence and draw all reasonable inferences in the light most favorable to a party opposing a summary judgment motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). A court "may not make credibility determinations or weigh the evidence" in ruling on the motion. *Reeves*, 530 U.S. at 150; *Anderson*, 477 U.S. at 254-55. Moreover, the evidence the non-movant provides must raise "more than . . . some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The evidence must be such that a jury could reasonably find in the non-movant's favor. *Anderson*, 477 U.S. at 248. If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

The moving party bears the initial burden of showing the court there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party with the burden of proof on an issue "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When, as here, a nonmovant bears the burden of proof, the movant may demonstrate it is entitled to summary judgment either by (1) *submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense*, or (2) *arguing there is no evidence to support an essential element of the nonmovant's claim or affirmative*

*defense. Celotex*, 477 U.S. at 322–25 (emphasis added). There is "no genuine issue as to any material fact [if] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323; *see generally Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F.Supp. 943, 962 (N.D. Tex. 1995) (quoting *Fontenot*, 780 F.2d at 1194) (discussing affirmative defenses).

Once the movant has made this showing, the burden shifts to the nonmovant to establish there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Celotex*, 477 U.S. at 324. "[C]onclusory allegations, speculation, and unsubstantiated assertions" will not satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1). A court "resolve[s] factual controversies in favor of a nonmoving party . . . only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999). When a plaintiff fails to defend a claim in response to a summary judgment motion, the claim is deemed abandoned. *See Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (concluding that the plaintiff abandoned her retaliatory abandonment claim when she failed to defend the claim in response to a motion to dismiss).

"A party opposing such a summary judgment motion may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255–57). The Fifth Circuit has explained:

> The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his

or her claim.... "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992).

*Ragas*, 136 F.3d at 458. Regarding assertions of fact, Federal Rule of Civil Procedure 56 states:

> [i]f a party fails ... to properly address another party's assertion of fact as required by Rule 56(c), the court may ... (2) consider the fact undisputed for purposes of the motion [and] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]

Fed. R. Civ. P. 56(e)(2)-(3).

**B.     Bifurcation**

Rule 42 of the Federal Rules of Civil Procedure govern the bifurcation and consolidation of trials. A court may, "[f]or convenience, to avoid prejudice, or to expedite and economize, ... order a separate trial of one or more separate issues." Fed. R. Civ. P. 42(b). Although a court has "sole discretion" in its decision to bifurcate, in determining whether a case should be bifurcated, the Rules instruct courts to consider three factors: (1) convenience, (2) prejudicial effect, and (3) efficiency. *United Healthcare Servs. Inc. v. Synergen Health LLC*, No. 3:20-CV-0301-X, 2023 WL 6471701, at *1 (N.D. Tex. Oct. 4, 2023). Bifurcation is thus "a case-specific procedural matter within the sole discretion of the district court." *Nester v. Textron, Inc.*, 888 F.3d 151, 163 (5th Cir. 2018).

However, when bifurcating, a court "must preserve any federal right to a jury trial." Fed. R. Civ. P. 42(b). Moreover, the Fifth Circuit has stated that "inherent in the Seventh Amendment guarantee of a trial by jury is the general right of a litigant to have only one jury pass on a common issue of fact"; that "[s]eparation of issues is not the usual course that should be followed"; and that in order to justify bifurcation, "[t]he issue to be tried must be so distinct and separable from the others that a trial of it alone may be had without injustice." *McDaniel v. Anheuser-Busch, Inc.*, 987

F.2d 298, 304-05 (5th Cir. 1993); *see State of Ala. v. Blue Bird Body Co., Inc.*, 573 F.2d 309, 318 (5th Cir. 1978).

### III. ANALYSIS

The Non-Exempt Plaintiffs bring their overtime miscalculation claim under the FLSA alleging that Providence failed to include all remuneration in the regular rate of pay under 29 U.S.C. § 207(e) as to the Non-Exempt Plaintiffs.[6] (ECF No. 11). Specifically, the Non-Exempt Plaintiffs argue that Providence violated the FLSA by deducting earned commissions from the Non-Exempt Plaintiffs' overtime premium pay, instead of including such commissions in calculating the regular rate of pay. (ECF No. 11 at 12). Providence's motion for summary judgment asks the Court to dismiss the Non-Exempt Plaintiffs' overtime miscalculation claim as Providence's calculation for overtime premium pay for commissions complies with the FLSA. The Court agrees with Providence.

**A.  Overview of the FLSA**

The FLSA mandates that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). "The regular rate of pay at which the employee is employed may in no event be less than the statutory minimum."[7] 29 C.F.R. § 778.107.

"The FLSA created a comprehensive federal wage-and-hour scheme . . . designed to give specific minimum protections to individual workers." *Aldridge v. Mississippi Dep't of Corr.*, 990

---

[6] It is undisputed that the Non-Exempt Plaintiffs are covered under the FLSA.
[7] The current statutory minimum wage is $7.25 an hour. *See* 29 U.S.C. § 206(a)(1)(C).

F.3d 868, 871 (5th Cir. 2021). "The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, labor conditions that are detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981). The Act ensures that each employee covered by the Act would "receive a fair day's pay for a fair day's work and would be protected from the evil of overwork as well as underpay." *Aldridge*, 990 F.3d at 872 ("Workers covered by the Act are entitled to a minimum wage and overtime compensation.")

    1.    *Regular Rate of Pay*

The FLSA broadly defines the regular rate of pay as the hourly rate actually paid the employee for all remuneration for employment. 29 U.S.C. § 207(e); *see Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1041 (5th Cir. 2010). An employee's regular rate of pay is the "hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed." 29 C.F.R. § 778.108. The way the regular rate is determined is "a question of how the employer pays the employee for the hours that are worked—the type of pay." *Serrano*, 227 F. Supp. 3d at 769. "The FLSA does not prohibit particular pay structures . . . [it] merely requires that they be properly interpreted for minimum wage and overtime calculations." *Serrano*, 227 F. Supp. 3d at 771.

"Calculation of the correct regular rate is the linchpin of the FLSA overtime requirement—an often tricky calculation that the Supreme Court has called perplexing." *Hills v. Entergy Operations, Inc.*, 866 F.3d 610, 614 (5th Cir. 2017). "The Wage and Hour Division of the Department of Labor attempts to assist with its guidance and examples in the Code of Federal Regulations that this court and others often rely on." *Hills*, 866 F.3d at 614; *see* 29 C.F.R. §§ 778.107–.122.

"The regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments." *Bay Ridge Operating Co. v. Aaron,* 334 U.S. 446, 461 (1948). "Department of Labor regulations state that the 'regular rate' is "determined by dividing [an employee's] total remuneration for employment . . . in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." *Dacar v. Saybolt, L.P.*, 914 F.3d 917, 929 (5th Cir. 2018) (quoting 29 C.F.R. § 778.109). "As long as the minimum hourly rates . . . are respected, the employer and employee are free to establish this regular rate at any point and in any manner they see fit." *Walling v. Youngerman-Reynolds Hardwood Co., Inc.,* 325 U.S. 419, 424-25 (1945). "They may agree to pay compensation according to any time or work measurement they desire." *Walling*, 325 U.S. at 425.

    2.    *Commission Payments*

It is undisputed that the FLSA does not mandate payment of commissions. (ECF No. 69 at 23). However, when commissions are paid—whether based on a percentage of total sales or of sales in excess of a specified amount, or on some other formula—they are "payments for hours worked and must be included in the regular rate." 29 C.F.R. § 778.117. "This is true regardless of whether the commission is the sole source of the employee's compensation or is paid in addition to a guaranteed salary or hourly rate, or on some other basis, and regardless of the method, frequency, or regularity of computing, allocating and paying the commission." § 778.117.

In some circumstances, the commission cannot be calculated until after the regular rate of pay is apportioned—thus referred to as deferred commission payments. *See* 29 C.F.R. § 778.119. "The thrust of § 778.119 is that, in situations where the calculation and payment of the commission cannot be completed until after the regular pay day, the employer can disregard the commission in determining the regular pay rate until the amount of the commission can be ascertained." *Rogers*

*v. Sav. First Mortg., LLC*, 362 F. Supp. 2d 624, 633 (D. Md. 2005). In its entirety this regulation states:

> If the calculation and payment of the commission cannot be completed until sometime after the regular pay day for the workweek, the employer may disregard the commission in computing the regular hourly rate until the amount of commission can be ascertained. Until that is done he may pay compensation for overtime at a rate not less than one and one-half times the hourly rate paid the employee, exclusive of the commission. When the commission can be computed and paid, additional overtime compensation due by reason of the inclusion of the commission in the employee's regular rate must also be paid. *To compute this additional overtime compensation, it is necessary, as a general rule, that the commission be apportioned back over the workweeks of the period during which it was earned.* The employee must then receive additional overtime compensation for each week during the period in which he worked in excess of the applicable maximum hours standard. *The additional compensation for that workweek must be not less than one-half of the increase in the hourly rate of pay attributable to the commission for that week multiplied by the number of hours worked in excess of the applicable maximum hours standard in that workweek.*

§ 778.119 (emphasis added).

3.   *Overtime Payments*

For non-exempt employees, the calculation of payment, including overtime, is governed by regulations. *See* §§ 778.107–.122. The general overtime pay standard "requires that overtime must be compensated at a rate not less than one and one-half times the regular rate at which the employee is actually employed." § 778.107. Overtime is computed in terms of an hourly rate—thus it is generally "computed by dividing the salary by the number of hours which the salary is intended to compensate." *Hills*, 866 F.3d at 614.

In a deferred commission situation, it is sometimes "not possible or practicable to allocate the commission among the workweeks of the period in proportion to the amount of commission actually earned or reasonably presumed to be earned each week." 29 C.F.R. § 778.120. Although not mandatory, this regulation provides two "reasonable and equitable" methods to properly allocate the commission in such situation. *See* § 778.120. This regulation has been cited only once

by the Fifth Circuit in which the Court stated that it is the duty of the district court to "sort through these variables and adopt some reasonable and equitable method to allocate the commission among workweeks of the period in proportion to the amount of commission actually earned or reasonably presumed to be earned each week." *Brennan v. Lauderdale Yacht Basin, Inc.*, 493 F.2d 188, 191 (5th Cir. 1974).

**B.     The Non-Exempt Plaintiffs' Overtime Miscalculation Claim**

The Non-Exempt Plaintiffs allege that Providence violated the FLSA as Providence was required to include all renumeration in the regular rate of pay when calculating overtime premium pay under § 207(e), and Providence failed to do so. (ECF No. 11 at 12). Specifically, the Non-Exempt Plaintiffs argue:

> Defendants purported to pay some overtime wages to Plaintiff Carpenter and the putative Collective Action Members. However, rather than include Plaintiff Carpenter and the putative Collective Action Members' commission in the regular rate of pay when calculating their overtime premium pay, per 29 C.F.R. § 778.117, Defendants deducted earned commissions from their respective overtime premium pay in violation of the law.

(ECF No. 11 at 12). Confusingly enough, later in their briefing, the Non-Exempt Plaintiffs also assert the direct opposite—that Providence subtracted earned overtime wages from earned commissions. (ECF No. 69 at 8). Thus, it is unclear if the Non-Exempt Plaintiffs are asserting that Providence deducted earned commissions from overtime pay, or the other way around. Additionally, the Non-Exempt Plaintiffs further contend that the statement of the issue here is:

> Can Defendants demonstrate that they paid the Non-Exempt Plaintiffs an advanced draw on commissions, entitling them to deduct earned overtime wages, where Defendants did not establish any written policy regarding calculation of commissions or when commissions were considered to be "earned," paid the Non-Exempt Plaintiffs regular and overtime wages in arrears rather than in advance, and deducted earned overtime wages from earned commissions?

(ECF No. 69 at 7).

First, it must be noted that there is no evidence of any agreement between Providence and the Non-Exempt Plaintiffs under which Providence agreed to pay commissions or any agreed formula as to calculate such commissions. (ECF No. 62 at 105-06) (deposition of Plaintiff Camay Trammell).[8] Second, the Non-Exempt Plaintiffs assert that Providence's deductions come from "earned" commissions, which they do not, as the deductions come from *gross commission*. The Non-Exempt Plaintiffs state that "commissions were earned when Plaintiffs closed a transaction, not when commissions were calculated or paid." (ECF No. 69 at 17). In opposition, Providence argues that:

> The Non-Exempt Plaintiffs cannot cite any provision of the FLSA or its governing regulations that prohibit Providence from deducting overtime wages from gross commission, and they cannot dispute the fact that commissions were 'delivered' only when Providence actually paid the Non-Exempt Plaintiffs such commissions. Indeed, the Non-Exempt Plaintiffs admit that they were only entitled to the Net Commissions (i.e., the commissions were 'earned') when Providence finished its calculation and actually paid the Non-Exempt Plaintiffs such Net Commissions."

(ECF No. 61 at 38-39); *see also* (ECF No. 62 at 75) (deposition of Kimberly Sheets Sheffield).[9]

As shown above, Providence lays out the calculations regarding all aspects of the Non-Exempt Plaintiffs' compensation in minute detail. *See* supra § I.B. The Non-Exempt Plaintiffs never refute or address these calculations other than stating that "they did not agree to or with the

---

[8] A: "Our pay structure was we received salary on the 1st, and our commission and salary on the 15th."
  Q: "Who did you each that agreement with?"
  A: "That was standard for the company, to my knowledge."
  Q: "Who communicated that standard policy to you?"
  A: "I don't know that anybody did. That's just when I received my paychecks."
  Q: "You never received anything in writing that said you would receive your commission on the 15th of a month under a certain formula or structure, correct?"
  A: "If I did, I don't remember."
  Q: "And just so we're clear, you don't have any issue with Providence deducting losses and anything on the loss report including notaries, if there was any, or out-of-county expenses from your commission; is that correct?"
  A: "That's standard in the title industry."
  Q: And you don't have any issue with that, correct?"
  A: "I do not."
[9] Q: "Well, is it [commission] earned before it's paid in your mind?"
  A: "No. Commissions are paid once they're earned."

pay scheme which called for deductions of their overtime pay from earned commissions." (ECF No. 69 at 18). Rather, the Non-Exempt Plaintiffs merely put forth the following as the correct way Providence should have paid overtime wages (without deduction from any commission):

> Plaintiffs' respective basic rates should have been multiplied by all hours worked in each workweek, and any commission (or portion of commission) earned in such workweek added to that. Then that sum should be divided by all hours worked to obtain the regular rate. The overtime due is the basic rate multiplied by the number of overtime hours worked added to half the regular rate multiplied by the number of overtime hours worked.

(ECF No. 69 at 8).

Although the Non-Exempt Plaintiffs are correct in their assertion that "all remuneration, including commissions, is to be included in the regular rate of pay when calculating overtime premium compensation," the Court finds two flaws with the Non-Exempt Plaintiffs' argument and proposed overtime calculation. (ECF No. 69 at 20). First, the Non-Exempt Plaintiffs' fail to account for deferred commission, and second, they fail to differentiate between gross commission and net commission for the overtime premium calculation.

Although there is no Fifth Circuit precedent on this exact issue, the Court finds a district court decision outside this Circuit to be highly persuasive as it is seemingly analogous to the issue here. *See Mitchell v. Wells Fargo Bank, N.A.*, No. 220CV02444TLPATC, 2022 WL 19076619, at *10 (W.D. Tenn. Dec. 14, 2022). In *Mitchell*, the plaintiffs claim that by excluding their commissions and bonus income from their regular rate of pay when calculating their overtime pay, Wells Fargo violated the FLSA. 2022 WL 19076619, at *10. The district court disagreed.

> Plaintiff's allegations notwithstanding, Wells Fargo calculates and pays HMCs [the plaintiffs] their overtime payments under the Plan just like the federal regulations require. HMCs are paid commissions based on the mortgage loans that funded the month before. So, although HMCs are paid every two weeks, Wells Fargo cannot calculate and pay their net commissions until a month ends. Hourly overtime pay is still paid before Wells Fargo determines net commissions and overtime on those commissions. *But overtime pay on commissions is different—if an HMC worked

> *any overtime hours in the month before and earned net commissions in that month, then, on the last pay period of each month, Wells Fargo pays an overtime premium on the earlier month's net commissions. The federal regulations for FLSA allow such deferred overtime pay on commissions because, under the Plan, Wells Fargo also pays HMCs their hourly overtime pay during the pay period it is earned. See 29 C.F.R. 778.119.*

*Mitchell*, 2022 WL 19076619, at *10 (emphasis added).

Similarly, the Non-Exempt Plaintiffs' allegations notwithstanding, Providence calculates and pays the Non-Exempt Plaintiffs their overtime payments under the compensation formula just like the federal regulations require. *See* §§ 778.107; 778.119. Although the Non-Exempt Plaintiffs are paid every two weeks—on the first and fifteenth of every month—Providence can only calculate and pay their net commissions once a month—on the fifteenth of every month. (ECF No. 61 at 15). The Non-Exempt Plaintiffs are still paid hourly overtime compensation for all hours worked over 40 in a workweek—Base OT—before Providence determines net commissions and overtime on those commissions.[10] (ECF No. 61 at 13). Thus, Providence complies with the regulations as Base OT is paid during the pay period it is earned and is calculated as the regulations require: by multiplying the Non-Exempt Plaintiffs' regular rate by 1.5. *See* § 778.107 ("overtime must be compensated at a rate not less than one and one-half times the regular rate at which the employee is actually employed").

However, overtime pay on deferred commissions is different: if a non-exempt employee worked any overtime hours in the prior month[11] and earned net commissions, then on the fifteenth of each month, Providence pays an overtime premium on the prior month's net commissions—

---

[10] Since the Non-Exempt Plaintiffs are paid twice a month, the "current payroll period" is comprised of two weeks. However, for purposes of calculating overtime, Providence uses a single workweek as its standard for determining if a Non-Exempt Plaintiff worked over 40 hours in that week. For example, the Base OT for a certain payroll period might be determined based off 7 overtime hours— the sum of the Non-Exempt Plaintiff working 3 overtime hours in the first week of the pay period, and 4 overtime hours in the second. Thus, Providence complies with the regulations by using a single workweek as its standard. *See* C.F.R. § 778.104.

[11] Month here refers to the fifteenth of the prior month to the fifteenth of the subsequent month, as net commissions were paid on the fifteenth of each month and not at the end of the month.

Net Commission OT. This deferred overtime pay on commissions is lawful under the FLSA federal regulations because the Non-Exempt Plaintiffs are also receiving their hourly overtime pay (Base OT) during the pay period it is earned—on the first and fifteenth of every month. *See* § 779.119.

In *Mitchell*, the plaintiffs argue that "Wells Fargo omits commissions earned and vested but not distributed when calculating overtime." 2022 WL 19076619, at *11. Stated simply, the plaintiffs believe Wells Fargo should "calculate overtime based on gross commissions, rather than net commissions." *Mitchell*, 2022 WL 19076619, at *11. Although the plaintiffs might wish their pay to be calculated differently, the "formula for paying HMCs overtime premiums on their hourly pay and other incentive pay is *valid under the FLSA*." *Mitchell*, 2022 WL 19076619, at *11 (emphasis added).

Here, the Non-Exempt Plaintiffs make a nearly identical argument as the plaintiffs make in *Mitchell*. The Non-Exempt Plaintiffs state that Providence "merely maintain[s] that they were allowed to subtract any overtime they paid in a previous workweek from earned commissions in a subsequent workweek." (ECF No. 69 at 23). This assertion by the Non-Exempt Plaintiffs is not only incorrect in stating what Providence does in its calculations, but also confirms that the Non-Exempt Plaintiffs misunderstand the compensation scheme as a whole. Just as in *Mitchell*, stated simply the Non-Exempt Plaintiffs believe Providence should calculate premium overtime pay on commission based on gross commissions—before the values of previously paid base overtime compensation are deducted—rather than net commissions. Mere wishful thinking by the Non-Exempt Plaintiffs does not mean that Providence's formula of calculating overtime pay on commission is a violation of the FLSA. As stated by the Supreme Court of Vermont, "§ 778.207(e) does not prohibit employers from deducting overtime wages from gross commissions because it

does not mandate the payment of gross commissions at all." *Mitchell v. NBT Bank, N.A.*, 2022 VT 17, ¶ 9, 216 Vt. 338, 343–44, 278 A.3d 1015, 1019 (2022).

What Providence is doing—deducting base overtime wages from *unearned gross commissions*, to then calculate net commission, and subsequently use that net commission to calculate overtime pay on commissions—is not prohibited by the FLSA. *See* supra § I.B. Thus, Providence is not deducting *earned* commissions when calculating overtime pay on commissions, nor is Providence deducting overtime wages from *earned* commissions. In sum, Providence's overtime calculation formula is valid under the FLSA, and the Non-Exempt Plaintiffs' argument must fail. The Court grants summary judgment as to Providence, thus disposing of the Non-Exempt Plaintiffs' overtime miscalculation claim.

## C. Providence's Motion to Bifurcate

In its motion to bifurcate, Providence asks the Court to (i) bifurcate Peden's claim from the Non-Exempt Plaintiffs' claims, and (i) bifurcate the Non-Exempt Plaintiffs' trial into liability and damages. (ECF No. 72 at 9). Because the Court is granting summary judgment as to Providence on the Non-Exempt Plaintiffs' claim, thereby dismissing the Non-Exempt Plaintiffs' claim, Providence's motion to bifurcate need not be addressed, and thus is denied as moot.

## IV. CONCLUSION

For the reasons enumerated above, the Court **GRANTS** Providence's Amended Motion for Partial Summary Judgment, (ECF No. 61), and the Non-Exempt Plaintiffs' FLSA overtime miscalculation claim is **dismissed with prejudice**. Further, by granting Providence's Amended Motion for Partial Summary Judgment, the Court **DENIES AS MOOT** Providence's Motion to Bifurcate. (ECF No. 72).

*(signature page to follow)*

**SO ORDERED:** February 29, 2024.

Ada E. Brown
UNITED STATES DISTRICT JUDGE